UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Karen Cupe, et al.,          :
    Plaintiffs,          :
                         :
v.                           :     Case No. 3:06cv214 (JBA)
                         :
Theresa Lantz, et al.,       :
    Defendants.          :

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. # 30]

On February 10, 2006, plaintiffs Karen Cupe, a former inmate at the York Correctional Institution ("York"), which is operated by the Connecticut Department of Correction ("DOC"), and her husband, Durant Cupe, initiated this damages action against defendants the Commissioner of Correction, the head of the Correction Security Division, the warden of York, and various other York and DOC employees, alleging violations of 42 U.S.C. §§ 1983, 1985, 1988, an assault claim against defendant Raul J. Laffitte, and a loss of consortium claim by plaintiff Durant Cupe, arising out of the alleged sexual assault of Ms. Cupe by defendant Laffitte on February 12, 2003 while Ms. Cupe was incarcerated at York. See Compl. [Doc. # 1]. Plaintiffs sued all defendants in their official capacities and Laffitte in his individual capacity as well. Subsequently, on August 11, 2006, plaintiffs amended their complaint (with permission of the Court, see [Doc. # 19]) to sue all defendants in their individual, as well as official, capacities. See Am. Compl. [Doc. # 20].

1

Defendants now move pursuant to Fed. R. Civ. P 12(b)(6) to dismiss this action on the following grounds: (1) the action against the defendants in their official capacities must be dismissed on the basis of sovereign immunity; (2) the claims against defendant Laffitte in his individual capacity must be dismissed on the basis of the prior pending action doctrine as duplicative of an action filed by plaintiffs in Connecticut Superior Court; (3) the claims against the remaining individual capacity defendants must be dismissed pursuant to the applicable three-year statute of limitations, failure to state a claim upon which relief can be granted, lack of personal involvement, and qualified immunity.  See Mot. to Dismiss [Doc. # 30].  For the reasons that follow, defendants' motion is granted in part and denied in part.

## I.    Factual and Procedural Background

The allegations of the Amended Complaint, which at this stage the Court must accept as true, reveal the following facts. On February 12, 2003, plaintiff Karen Cupe was incarcerated at York and defendant Laffitte was a "Correctional Food Service Supervisor II" there and had "supervisory or disciplinary power over [Ms. Cupe]."  Am. Compl. Count 1 ¶¶ 2-3.  On February 12, 2003, Karen Cupe was working in the kitchen at York under Laffitte's supervision and Laffitte, "on one or more occasions in the storage area at York beginning at approximately 12:45 p.m., .

2

. . intentionally, wantonly, maliciously, unlawfully, physically, violently and sexually assaulted and battered [Karen Cupe] and compelled her by use of force and threats thereof to engage in sexual intercourse with him, she fearing physical injury to herself." Id. Count 1 ¶ 5.

"As a result of the atmosphere of intimidation by staff on inmates," Ms. Cupe was initially "reluctant to complain to staff about the assaults," but "[b]y 2 p.m., February 14, 2003, York staff [had] received information about the assaults, but Defendants who were York staff members, individually or in concert, . . . failed to properly investigate, and obstructed and compromised the investigation and prosecution of the assaults, by their acts or omissions, by delaying bringing [Karen Cupe] to a hospital for a physical examination to confirm the nature of the assaults (instead confining her to a restricted unit), and delaying notifying the Connecticut State Police and the Department of Correction Security Division about the allegations of the assaults." Id. Count 1 ¶¶ 6-7.  The Amended Complaint also provides specific allegations against defendants other than Laffitte, more specifically detailing the claimed alleged deficiencies and failure to investigate, including delaying bringing Karen Cupe to a hospital, failing to interview witnesses as requested by Karen Cupe, failure to discipline Laffitte, delay in providing requested records, failure to properly train York

staff "in the investigation of a sexual assault complaint, including the protocol that a so-called 'rape kit' must be administered regarding an alleged victim within 72 hours of an alleged sexual assault," and failure to provide adequate protection and supervision of Karen Cupe.  Id. Count 1 ¶¶ 8-15.

The Amended Complaint alleges that defendants' actions were wanton, willful, and malicious, and also that "[d]efendants entered into a conspiracy to injure or oppress [Karen Cupe] because of her having exercised the rights and privileges secured to her by the Constitution and laws of the United States."  Id. Count 3 ¶ 18.  It also asserts state law claims of sexual assault and violations of Conn. Gen. Stat. §§ 53a-70, 53a-71 (sexual assault in the first and second degrees) against defendant Laffitte.  Id. Counts 4, 5, 7.  The damages alleged to have been suffered by Karen Cupe include "severe shock and a loss of free association with her spouse, friends and neighbors; she was greatly humiliated, shamed and embarrassed, endured physical pain and mental suffering, and was, still is and will likely continue to be for a long period of time or for the rest of her life, nervous and distraught."  Id. Count 1 ¶ 18.  Additionally, she "was required to undergo medical care and treatment" and "has been unable to work."  Id. Count 1 ¶¶ 19-20.  The Amended Complaint also includes a loss of consortium claim on behalf of plaintiff Durant Cupe, Karen Cupe's husband.  Id. Count 6.

4

## II.  Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## III. Discussion

### A.   11th Amendment Bar to Official Capacity Suits

As plaintiffs appear to concede by not responding to defendants' arguments, "[i]t is now well established that a suit against a state official in his or her official capacity is, in actuality, a suit against the state. . . . It is equally clear that the doctrine of sovereign immunity embodied by the Eleventh

Amendment precludes a suit for damages against a state brought under section 1983." Schiff v. Kerrigan, 625 F. Supp. 704, 707 n.7 (D. Conn. 1986) (citing Brandon v. Holt, 469 U.S. 464 (1985); Edelman v. Jordan, 415 U.S. 651 (1974)) (dismissing § 1983 suit against defendant state tax agents in their official capacity); accord Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself. . . . We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.  We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Accordingly, plaintiffs' claims against all defendants in their official capacities are dismissed.

B.   Prior Pending Action Doctrine

Next, defendants seek dismissal of plaintiffs' claims against defendant Laffitte on the basis of the prior pending action doctrine in light of a Connecticut Superior Court action brought by plaintiffs against Laffitte concerning the same alleged sexual assault.  The prior pending action doctrine is one

of federal judicial efficiency and provides that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir. 1986)(internal quotation marks omitted). A district court may opt either to stay or to dismiss the subsequently filed case in deference to the earlier-filed case. Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991). This doctrine is applicable where there are two identical or similar actions contemporaneously pending in two federal courts, for the reason that "[a]s between federal courts . . . the general principle is to avoid duplicative litigation." Colo. River, 424 U.S. at 817. By contrast, "[g]enerally as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. The Supreme Court has explained that "[t]his difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id.

Thus, instead of the prior pending action doctrine which would yield, nearly automatically, dismissal of this action in

favor of a substantially similar earlier-filed action, given that
the prior pending action in this instance is a state action, the
more appropriate analysis is one of abstention, pursuant to
Colorado River.  "To determine whether abstention under Colorado
River is appropriate, a district court is required to weigh six
factors, with the balance heavily weighted in favor of the
exercise of jurisdiction." Village of Westfield v. Welch's, 170
F.3d 116, 121 (2d Cir. 1999) (citing Moses H. Cone Mem'l Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).  These factors
are:

> (1) the assumption of jurisdiction by either court over
> any res or property;
> (2) the inconvenience of the federal forum;
> (3) the avoidance of piecemeal litigation;
> (4) the order in which jurisdiction was obtained;
> (5) whether state or federal law supplies the rule of
> decision; and
> (6) whether the state court proceeding will adequately
> protect the rights of the party seeking to invoke
> federal jurisdiction.

Id.  "No single factor is necessarily decisive, . . . and the
weight to be given to any one factor may vary greatly from case
to case, depending on the particular setting of the case."  Id.
"[T]he test . . . is no mechanical checklist."  Id.
Additionally, a "necessary prerequisite to abstention under
Colorado River" is "a finding that the concurrent proceedings are
'parallel'".  Dittmer v. Cty. of Suffolk, 146 F.3d 113, 117-18
(2d Cir. 1998).  "Suits are parallel when substantially the same
parties are contemporaneously litigating substantially the same

issue in another forum." Id. (quoting Day v. Union Mines Inc., 862 F.2d 652, 655 (7th Cir. 1988)).

Here, the state court action, like this federal action, is brought against defendant Laffitte and alleges sexual assault and loss of consortium by plaintiff Durant Cupe. See Superior Ct. Compl. [Doc. # 31-4].[1] However, the state action does not include any claim of violation of any federal statute, including 28 U.S.C. § 1983, as asserted in this action.

Examining the Colorado River factors, both parties agree that the first factor of jurisdiction over any res or property is inapplicable in this case, as is the convenience factor because both fora are equally convenient for the parties. The neutrality of these factors in fact favors retention. See Village of Westfield, 170 F.3d at 122 ("We have held that the absence of a res points toward exercise of federal jurisdiction.") ("We have held that where the federal court is just as convenient as the state court, the factor favors retention of the case in federal court.") (internal citations omitted). As to the avoidance of piecemeal litigation, "the Supreme Court has held that 'mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."

---

[1] The Court takes judicial notice of the pleadings in the Superior Court action. See Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings.")

Id. at 123.  Further, although there exists a risk of
inconsistent outcomes if the sexual assault and loss of
consortium claims are maintained in both state and federal court,
there are federal claims which will go unheard if only the state
court action is maintained; accordingly, this factor weighs only
slightly in favor of abstention and is, as noted above, not
determinative.  Moving on to the fourth factor, "[t]his factor
does not turn exclusively on the sequence in which the cases were
filed, but rather in terms of how much progress has been made in
the two actions."  Id. at 122.  The Superior Court action was
filed only one day before this action and, moreover, there is no
indication that the Superior Court action is substantially more
advanced (if at all) in its progress, and thus this factor is
relatively neutral.  As is the fifth factor given that this
action involves both state and federal law claims.  Lastly, "if
there is any substantial doubt as to whether complete and prompt
protection of federal rights is available in the state
proceeding, dismissal would be a serious abuse of discretion."
Woodford v. Cmty. Action Agency of Greene County, 239 F.3d 517,
523 (2d Cir. 2001) (internal quotations omitted).  Here, there is
a concern that the state court action may not adequately protect
plaintiffs' interests, as the state court action does not include
plaintiffs' federal § 1983 claims.

    Thus, in light of the direction that "a district court is

required to weigh six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction,'" <u>Village of Westfield</u>, 170 F.3d at 121 (citing <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 16), and as more factors weigh in favor of federal jurisdiction than against it, including the crucial sixth factor involving protection of plaintiffs' rights, the Court is reluctant to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," <u>Colo. River</u>, 424 U.S. at 817.  Accordingly, defendants' motion as to the dismissal of claims against defendant Laffitte must be denied.

    C.    <u>Statute of Limitations</u>

    Defendants next argue that the claims against defendants other than Laffitte in their individual capacities are time-barred, as the Amended Complaint naming them in their individual capacities was filed after the applicable three-year statute of limitations.  "Although the statute of limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint."  <u>Collin v. Securi Int'l</u>, 322 F. Supp. 2d 170, 172 (D. Conn. 2004) (internal quotations omitted).

    "The statute of limitations applicable to claims brought under § 1981 and § 1983 in Connecticut is three years."  <u>Lewis v. Conn. Dep't of Corr.</u>, 355 F. Supp. 2d 607, 621 (D. Conn. 2005)

11

(citing <u>Walker v. Jastremski</u>, 159 F.3d 117, 119 (2d Cir. 1998));
<u>Holt v. KMI-Cont'l, Inc.</u>, 95 F.3d 123, 131 (2d Cir. 1996).  Thus,
insofar as the underlying facts of plaintiffs' federal statutory
claims – <u>i.e.</u> the alleged assault by Laffitte and defendants'
allegedly unconstitutional response – occurred on February 12,
2003 and in the days immediately following, the three-year
statute of limitations expired in February 2006, and the Amended
Complaint was filed six months later, on August 11, 2006.  Thus,
the Amended Complaints' claims against defendants other than
Laffitte in their individual capacities are valid only if
plaintiffs can satisfy the requirements of Fed. R. Civ. P. 15(c),
which provides:

> An amendment of a pleading relates back to the date of
> the original pleading when
> (1) relation back is permitted by the law that provides
> the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended
> pleading arose out of the conduct, transaction, or
> occurrence set forth or attempted to be set forth in
> the original pleading, or
> (3) the amendment changes the party or the naming of
> the party against whom a claim is asserted if the
> foregoing provision (2) is satisfied and, within the
> period provided by Rule 4(m) for service of the summons
> and complaint, the party to be brought in by amendment
> (A) has received such notice of the institution of the
> action that the party will not be prejudiced in
> maintaining a defense on the merits, and (B) knew or
> should have known that, but for a mistake concerning
> the identity of the proper party, the action would have
> been brought against the party.

<u>See also</u> <u>Gouveia v. Sig Simonazzi N. America, Inc.</u>, No. 03cv597
(MRK), 2005 WL 293506, at *4 (D. Conn. Jan. 11, 2005) ("[W]hen an

amendment seeks to add a party, . . . the proponent of the amendment must comply with the requirement of <u>both</u> Rule 15(c)(2) and Rule 15(c)(3)(A) and (B).") (adding a defendant in his or her individual capacity, even when already named in his or her official capacity, constitutes addition of a party).

Here, defendants concede that subsection (2) is satisfied, as the Amended Complaint clearly concerns the same events, facts, and allegations as those included in the original Complaint.  The issue, however, is whether subsection (3) is satisfied.  Turning to (3)(B) first, the Second Circuit has explained that its "language was prompted by several cases in which plaintiffs, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants," and has found that "'mistake' as used in Rule 15(c) applies to mistakes of law as well as fact."  <u>Soto v. Brooklyn Corr. Facility</u>, 80 F.3d 34, 35-36 (2d Cir. 1996) (internal citations omitted).  "Where there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of Rule 15(c)(3) is not met."  <u>Gouveia</u>, 2005 WL 293506, at *4 (holding that plaintiff's proposed amendment to assert products liability claims directly against third-party

defendants previously sued only for indemnification did not relate back to filing of initial complaint, also noting "as the Second Circuit has put it, 'the requirement that a new defendant knew he was not being named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity' rather than a matter of choice") (citing Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994)).

Here, plaintiffs' claim that they "made the mistake that persons who acted in their official capacity should be sued only in their official capacity and not individually, as is actually required in the Sec. 1980 series of federal statutes," Pl. Opp. [Doc. # 38] at 2, is belied by the fact that in their initial Complaint plaintiffs elected to sue Laffitte under these statutes in both capacities, which suggests to defendants, as it does to this Court, that plaintiffs made a conscious choice to sue Laffitte in both capacities and the other defendants in their official capacities only.  As other courts have held, that plaintiffs and/or their counsel now realize their error in judgment, given that an official capacity damages suit which seeks no injunctive relief is essentially a suit against the state and is barred by the Eleventh Amendment, does not suffice to satisfy Rule 15(c)(3).  See Rendall-Speranza, 107 F.3d 913, 918-19 (D.C. Cir. 1997) (citing "cases in which the court did not allow a plaintiff who had sued a government office in his

official capacity to add the officer as a defendant in his
individual capacity"); Colvin v. McDougall, 62 F.3d 1316, 1318
(11th Cir. 1995) (reversing district court's decision to make
official capacity defendant also a party individually, noting
"[w]e stress as much as we can that the difference between an
official capacity suit and an individual capacity suit is a big
difference. . . . And, in general, plaintiffs have a duty to make
plain who they are suing and to do so well before trial");
Lovelace v. O'Hara, 985 F.2d 847, 850-51 (6th Cir. 1993)
(individual capacity amendment did not relate back to date of
original pleading, noting "the distinction between an official
capacity and an individual capacity suit is significant. . . .
[A]n amendment in a defendant's capacity in a lawsuit under 42
U.S.C. § 1983 alters the elements of recovery and defense [and]
require[s] major changes in pleading, discovery, trial
preparation and selection and location of witnesses to testify at
trial," and finding that "the complaint evidences an intentional
choice by [plaintiff's] attorney to bring an official capacity
suit.  That such a choice may not have been wise and that the
attorney later sought to change it, is insufficient to invoke
relation back of the amendment under Fed. R. Civ. P. 15(c)");
Smith v. Paladino, 317 F. Supp. 2d 884, 887-88 (W.D. Ark. 2004)
(holding that plaintiff's failure to include a defendant in her
individual capacity when plaintiff instituted the action "was an

instance not of mistaken identity but of mistaken legal judgment.
While [p]laintiff thought she could assert a claim for damages
against the College and the Board, she now recognizes that those
Defendants are immune from monetary relief and that a damages
claim can only lie against [proposed new defendant] in her
individual capacity.  This is not the type of 'mistake'
encompassed by Rule 15(c)'s relation-back provision").[2]

Thus, because plaintiffs cannot satisfy Rule 15(c)(3)(B) and
their amendments adding defendants in their individual capacities
therefore cannot relate back to their institution of this action,
their claims against these defendants in their individual
capacities are time-barred.[3]

---

[2] Plaintiffs do not support their reference to various
Connecticut statutes involving extension and/or inapplicability
of statutes of limitation in certain circumstances with any
authority to indicate that such state law provisions are
applicable to plaintiffs' federal statutory claims.  Moreover,
this situation does not appear to fit within the scope of such
state law provisions given that plaintiffs did not propose their
amendments within the 3-year statute of limitations, their
amendments do not fail because of insufficient service, want of
jurisdiction, or the death of any party, nor have plaintiffs
failed to obtain judgment "by reason of failure to name the right
person as defendant therein."  See Conn. Gen. Stat. §§ 52-592,
52-593.

[3] Defendants' arguments concerning whether service was
attempted within the 120 days allotted under Fed. R. Civ. P. 4(m)
and whether the notice requirement of Rule 15(c)(3)(A) was
satisfied are misdirected, as plaintiffs clearly did not initiate
their suit against the non-Laffitte defendants in their
individual capacities until after the 3-year statute of
limitations had expired in any event, and particularly in the
context of the dispute about defense counsel's role and
responsibilities with respect to service of and notice to these

**IV.   Conclusion**

For the foregoing reasons, defendants' Motion to Dismiss [Doc. # 30] is GRANTED in part as to plaintiffs' claims against defendants in their official capacities and the claims against the non-Laffitte defendants in their individual capacities, and DENIED in part as to plaintiffs' claims against defendant Laffitte in his individual capacity.[4]

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 18th day of January, 2007.**

_____

defendants.  <u>See</u> Pl. Mot. for Sanctions and/or To Compel [Doc. # 17/18].

[4] Given the Court's dismissal of plaintiffs' claims against all non-Laffitte defendants on Eleventh Amendment and statute of limitations grounds, the concerns articulated in plaintiffs' Motion for Speedy Ruling [Doc. # 39], requesting a ruling on plaintiffs' Motion to Collect Costs and Motion for Sanctions and/or Compel prior to the Court's ruling on defendants' Motion to Dismiss, are not implicated.